218 N.J. Super. 444 (1987)
528 A.2d 39
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JERRY POWELL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted May 6, 1987.
Decided June 8, 1987.
*446 Before Judges DREIER and STERN.
Alfred A. Slocum, Public Defender, attorney for appellant (Kenneth W. Elwood, Designated Counsel, of counsel and on the brief).
W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Carol A. Stanton, Deputy Attorney General, of counsel and on the brief).
PER CURIAM.
Defendant has appealed from his conviction of third degree burglary, N.J.S.A. 2C:18-2. He was sentenced to the presumptive term of four years.
Based upon the State's proofs, the facts appear to be the following. As a result of the triggering of a silent alarm at a commercial building, a patrolman was dispatched to the scene just before 5:30 a.m. on May 20, 1984. Upon approaching the building, the officer noticed a lone, unoccupied automobile in the parking lot and was soon joined by a backup officer who was accompanied by a police dog. While waiting for someone who could open the door to permit a search of the premises, they observed a broken window and, inside the building, glass on an adjoining table and on the floor beneath it. They also *447 saw what appeared to be a person moving inside the building. As one of the patrolmen waited by a rear corner of the building, he noticed a leg protrude from the broken window and then a person, later identified as the defendant, emerge. The patrolman announced himself but the person responded by running toward the front of the building. He was stopped by the police dog brought to the scene by the canine patrol officer. The officers then arrested defendant, informed him of his rights and took him into custody. The owner of the building and of the company operating therein testified that he did not know defendant and had not authorized him to enter the premises on the morning in question.
Defendant elected to testify despite numerous prior convictions, including four for burglary. He explained that he and one James Geldreich had stopped at the building because of a "for sale" sign in front. Defendant claimed that his employer was looking for such a building and that he, therefore, wanted to inspect it. He and Geldreich drove to the back of the premises and parked their car by a light. Defendant testified that he neither entered the building nor broke a window, but was apprehended outside the building by the officers. He further asserted that he and Geldreich parted company during their walk around the building and that he did not see Geldreich thereafter. On direct examination after defendant stated that the police did not apprehend Geldreich at the scene, defense counsel asked: "Did you tell the police he was there?" Defendant responded: "No, I did not." On cross-examination the prosecutor queried: "Well, you didn't offer the explanation [that Geldreich could have been the person inside the building who initially ran from the police], did you?" Defendant responded: "No." He further explained he did not tell the police about Geldreich because "they didn't ask."
*448 Defendant raises three issues on this appeal:
POINT I
The trial court committed reversible error by charging the jury that it had the right to draw an adverse inference from the defendant's failure to produce James Geldreich as a witness.
POINT II
The prosecutor's comments regarding the defendant's failure to produce Mr. Geldreich as a witness and the defendant's failure to offer an explanation to the police at the time of his arrest were improper and clearly capable of producing an unjust result.
POINT III
The sentence imposed upon the defendant was illegal as a result of the trial court's failure to set forth a statement of reasons in the judgment of conviction, pursuant to R. 3:21-5.
Defendant complains of the charge given by the court concerning the adverse inference that could be drawn from his failure to produce Goldreich, contending that it was not authorized under State v. Clawans, 38 N.J. 162 (1962). The State noted that defendant had indicated neither at the scene, through discovery, nor otherwise that he was accompanied by anyone else at the time of the alleged burglary. The first mention of Geldreich was during defendant's testimony, and when defense counsel was asked where Geldreich might be reached, defendant supplied an address but no telephone number. The prosecutor immediately sought to procure the witness's attendance, but this could not be accomplished. Defense counsel explained that Geldreich was available as a witness and was not incapacitated or sick, but had not been called by defendant because he did not want to implicate his friend.
The court considered the conditions set forth in State v. Clawans, 38 N.J. at 170-172, and gave the Clawans charge requested by the State. Although defendant has here contended that there was no showing that the witness was available, the judge's bases for his findings to the contrary and of the special relationship between defendant and the missing witness were based upon defense counsel's specific acknowledgement of the friendship and the witness's availability. We find no error in the court's decision to give the appropriate Clawans charge. Also, the privilege against self-incrimination is personal *449 and may not be asserted by defendant in the place of the absent witness. State v. Crews, 208 N.J. Super. 224, 231-232 (App.Div. 1986), aff'd 105 N.J. 498 (1987). There is no need here to remand for an Evid. R. 8(1) hearing to determine the prerequisites for a Clawans charge, since the elements were present in defense counsel's explanation of the reasons why Geldreich was not called. Cf. State v. Crews, supra, 208 N.J. Super. at 232-233.
Defendant next contends that the prosecutor's comments concerning defendant's failure to tell the police about the alleged presence of his friend improperly invaded defendant's right to remain silent at the time of his apprehension. This would have been a valid point had the prosecutor raised the issue of defendant's lack of response. In this case, however, defendant raised the issue during his own direct examination and relevant cross-examination. Since the matter was properly before the jury, it was the subject of fair comment. See State v. Carter, 91 N.J. 86, 125, 127-128 (1982); cf. State v. Hickman, 204 N.J. Super. 409, 414 (App.Div. 1985). This is not a case where defendant's silence at the time of arrest was being introduced against him through other witnesses or used to impeach his trial testimony by reference to inconsistent pretrial silence. See State v. Lyle, 73 N.J. 403, 410 (1977); State v. Deatore, 70 N.J. 100, 114 (1976). Rather, we find here there was merely fair comment, basically a recapitulation of the evidence upon an issue injected by defendant. Given the overwhelming evidence of defendant's guilt, even if this comment were error, the error clearly would have been harmless. R. 2:10-2.
Defendant has correctly noted that there is no statement of reasons appended to the judgment of conviction. The trial judge, however, made an ample statement of reasons at the time of sentencing. Ordinarily, we would remand this matter *450 for the judge to append his statement of reasons to the judgment. We note, however, the trial judge has retired in the interim between the trial and our decision on this appeal. Since the appending of a statement of reasons is a ministerial act, provided adequate reasons are given on the record, we direct that a copy of the statement of reasons from the sentencing transcript be appended to the judgment for use by the Parole Board or for such other purposes as may be necessary.
Since we are directing that the sentencing transcript be attached to the judgment, we are compelled to comment on an additional subject even though it is not raised by defendant.
In the course of sentencing, the sentencing judge referred to N.J.S.A. 2C:44-1e, which relates to the presumption against imprisonment for first offenders convicted of third degree crimes and less serious offenses, and then indicated that defendant had prior convictions for offenses similar to the one then before the court for sentencing. The court thereafter said:
Under those circumstances, there is nothing in the record that overcomes the presumption of imprisonment since he has a prior record and that  which indicates having just been paroled and again resorting to breaking and entering or burglary. It's obvious that he does present a threat of danger to the community. [Emphasis added].
The judge thus concluded that because defendant had a prior record he was subject to a "presumption of imprisonment." The judge also indicated that "[b]alancing these aggravating and mitigating circumstances, I find that neither one predominates the others."
We reject the notion that a second or subsequent offender charged with a third degree crime or less serious offense is subject to a "presumption of imprisonment." Where the presumption of imprisonment exists, the Legislature has expressed it in plain language. See N.J.S.A. 2C:44-1d; State v. Hodge, 95 N.J. 369, 374 (1984). In the absence of an express *451 legislative statement creating a presumption of imprisonment or a mandatory sentence, none exists. Cf. State v. Hodge, supra at 374.
Recently, in State v. Hartye, 105 N.J. 411 (1987) the Supreme Court decided that the custodial aspect of probation could be imposed without overcoming the presumption against imprisonment embodied in N.J.S.A. 2C:44-1e. The Court concluded that "imprisonment" within the meaning of the presumption and N.J.S.A. 2C:43-2b(3) was not "imprisonment" within the meaning of the provisions of the Code of Criminal Justice relating to the custodial aspect of probation, N.J.S.A. 2C:43-2b(2); 2C:45-lc. Hartye states that
once the presumption of non-imprisonment is overcome ... a defendant's sentence must fall within the presumptive range for a third- or fourth-degree offense. [105 N.J. at 420; Emphasis added].
It does not hold that any custodial sentence, including "imprisonment" within the meaning of N.J.S.A. 2C:43-2b(3), is necessary where the presumption of non-imprisonment is inapplicable.
N.J.S.A. 2C:44-1f(1) refers to the presumptive term "[w]hen a court determines that a sentence of imprisonment" should be imposed. [Emphasis added]. That language does not create a presumption of imprisonment, and a sentence of "imprisonment" does not necessarily have to be imposed whenever there is no presumption against imprisonment.
However, we are convinced that irrespective of verbiage used by the sentencing judge, he actually concluded that a State custodial sentence was warranted under the circumstances. Among other things he said,
I'm satisfied that probation for Mr. Powell at this stage would have little effect. It would merely be indicating that he's being given leniency for reasons that do not exist in the record, especially in view of his prior record.
Affirmed.