839 A.2d 908 (2004)
365 N.J. Super. 463
STATE of New Jersey, Plaintiff-Respondent,
v.
Damon L. HILL, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted December 9, 2003.
Decided January 12, 2004.
*909 Yvonne Smith Segars, Public Defender, attorney for appellant (Robert L. Sloan, Assistant Deputy Public Defender, of counsel and on the brief).
Peter C. Harvey, Attorney General of New Jersey (Christopher A. Alliegro, Deputy Attorney General, of counsel and on the brief).
Before Judges PRESSLER, CIANCIA and ALLEY.
The opinion of the court was delivered by *910 CIANCIA, J.A.D.
Defendant Damon L. Hill was charged with various offenses arising out of the bludgeoning death of an eighty-four-year-old woman, Anne King, in her home. The indictment also set forth charges alleging that defendant on prior occasions burglarized and criminally trespassed on Ms. King's home. Defendant's first trial ended with a not guilty verdict on the charge of purposeful or knowing murder, but the jury was unable to reach unanimity on all remaining charges.
Defendant's second jury trial resulted in guilty verdicts on the following crimes: felony murder, N.J.S.A. 2C:11-3a(3); armed robbery, N.J.S.A. 2C:15-1; seconddegree burglary, N.J.S.A. 2C:18-2; thirddegree burglary (two counts), N.J.S.A. 2C:18-2; fourth-degree criminal trespass (two counts), N.J.S.A. 2C:18-3a; third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4d; and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5d.
Defendant was sentenced to thirty years imprisonment with thirty years parole disqualification for the crime of felony murder. A concurrent fifteen-year term was imposed for armed robbery, and a concurrent seven-year term was imposed for second-degree burglary. For the third-degree crime of possessing a weapon for an unlawful purpose, a concurrent four-year sentence was given. Another concurrent four-year term was imposed for one of the third-degree burglary convictions. All other convictions merged. Appropriate fees and penalties were imposed.
On appeal defendant contends:
POINT I
THE VOIR DIRE OF PROSPECTIVE JURORS WAS INADEQUATE BECAUSE THE JUDGE REFUSED TO DETERMINE IF THEY COULD BE FAIR AND IMPARTIAL DESPITE THE NATURE OF THE CRIME, IN VIOLATION OF DEFENDANT'S RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL BY AN IMPARTIAL JURY. U.S. CONST. AMENDS. VI, XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10.
POINT II
IMPROPER SUMMATION REMARKS, CLAIMING THAT DEFENSE COUNSEL WAS TRYING TO DISTRACT THE JURORS FROM THE REAL ISSUES AND DEFENSE COUNSEL ALWAYS HAVE A RESPONSE NO MATTER WHAT THE EVIDENCE SHOWS, DEPRIVED DEFENDANT OF THE RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL. U.S. CONST. AMEND. XIV; N.J. CONST. (1947) ART. I, PARS. 1, 9, 10. (Not Raised Below)
POINT III
DEFENDANT'S CONVICTIONS FOR BURGLARY, ROBBERY, AND POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE SHOULD HAVE BEEN MERGED INTO THE CONVICTION FOR FELONY MURDER.
With the exception of defendant's merger contentions, we find insufficient merit in defendant's issues to warrant reversal of his conviction.
Simply stated, the State's case showed that defendant and his girlfriend lived next door to the house occupied by the victim, Anne King. King was eighty-four years old but very active and she frequently left her home to participate in various activities. Although King went to extraordinary lengths to secure her home from intruders, access to the house was possible through an upper-story bedroom window. That window, as it happened, was a short space *911 away from where defendant was living. Defendant, according to the State's evidence, would wait for Ms. King to go out and then enter her home through the upper-story window. He would take what he wanted and then return to his residence. On the last such occasion, Ms. King was home and defendant beat her to death with a hammer. During the police investigation, some coins were found on an upper ledge of defendant's residence. While he was being held at the Youth Detention Center, defendant made statements to other persons indicating that he broke into an old, white lady's house to rob her.
Defendant's first issue centers on the trial court's refusal to ask the jury on voir dire the following questions requested by defense counsel:
Number 8. "The charges in this case involve murder, possession of a weapon for [an] unlawful purpose, namely a hammer or blunt object. Do you have any experiences, beliefs or feelings which would influence you involving such charges?"
....
Number 10. "Do you have any attitude[s], biases or views which would cause you to be biased against [a] defendant charged with the use of a hammer or blunt object in a murder?"
Number 11. "Have you or any family member or friends had any experience which would cause you to be biased against the defendant charged with the use of a hammer or blunt object?"
Number 12. "Is there anything about this case that may cause you to feel under pressure to convict?"
Although we perceive no reasons why those questions were not asked, we find that the jury voir dire, reviewed in its entirety, sufficiently explored areas of possible jury prejudice and resulted in a fair and impartial jury. We note that, although the bludgeoning of the victim with multiple blows from a hammer was a horrific crime, the questions suggested by defense counsel were not designed to reach possible jury bias arising from the nature of the attack. A hammer as a murder weapon, when divorced from the details of its use, is no more emotional than many other possible murder weapons.
Here, the trial judge asked the jury numerous questions, including seven suggested by defense counsel that explored possible prior knowledge of the offense or of fellow jurors, the ability to follow the law as given, any bias that was based on race, any prejudice for or against police officers, and any juror participation in neighborhood crime watch programs. Three times the jurors were asked if there was any reason whatsoever that prevented them from being fair and impartial. Jurors who expressed a reason were excused. The court excused sixteen prospective jurors for cause. Defense counsel used twelve of twenty peremptory challenges. The State made no challenges.
The trial judge has broad discretion in formulating voir dire questions. Suggested additional questions by counsel should be considered but need not be asked. R. 1:8-3(a); State v. Manley, 54 N.J. 259, 281-283, 255 A.2d 193 (1969); accord State v. Biegenwald, 106 N.J. 13, 27-30, 524 A.2d 130 (1987); State v. Loftin, 287 N.J.Super. 76, 104-105, 670 A.2d 557 (App.Div.), certif. denied, 144 N.J. 175, 675 A.2d 1123 (1996); State v. Lumumba, 253 N.J.Super. 375, 391-394, 601 A.2d 1178 (App.Div.1992). We find no abuse of discretion by the trial court in the nature and extent of voir dire conducted in the present case.
As a matter of plain error, defendant contends that portions of the prosecutor's summation improperly disparaged defense *912 counsel by claiming that defense counsel was attempting to distract jurors from the real issues. No objection was raised by defense counsel at the time of trial. The issue was apparently raised in some fashion, unspecified in the present record, on defendant's motion for a new trial that was heard and denied at the time of sentencing. It was the trial judge's recollection that the prosecutor had not said anything objectionable on summation. The absence of a timely objection ordinarily prevents a finding that the prosecutor's remarks were reversibly offensive. State v. Loftin, 287 N.J.Super. 76, 101, 670 A.2d 557 (App.Div.), certif. denied, 144 N.J. 175, 675 A.2d 1123 (1996).
This was a lengthy trial and the summations reflected that. The defense summation was approximately an hour and forty minutes and the prosecutor's almost two hours. Our review of the prosecutor's summation as a whole reveals no improprieties that were clearly capable of producing an unjust resulti.e., no conduct so egregious as to have deprived defendant of a fair trial. R. 2:10-2; State v. Josephs, 174 N.J. 44, 124, 803 A.2d 1074 (2002); State v. Robinson, 266 N.J.Super. 268, 281-282, 629 A.2d 103 (App.Div.1993), rev'd on other grounds, 136 N.J. 476, 643 A.2d 591 (1994). The prosecutor's comments were either directed at the evidence or responsive to statements made by defense counsel. State v. Williams, 317 N.J.Super. 149, 158, 721 A.2d 718 (App. Div.1998), certif. denied, 157 N.J. 647, 725 A.2d 1128 (1999); State v. Powell, 218 N.J.Super. 444, 449, 528 A.2d 39 (App.Div. 1987). We find no grounds for reversal. State v. Ramseur, 106 N.J. 123, 322-323, 524 A.2d 188 (1987).
Finally, defendant raises merger contentions. He asserts that the conviction for possession of a weapon for an unlawful purpose should have merged into felony murder. The State agrees, as do we. State v. Diaz, 144 N.J. 628, 642, 677 A.2d 1120 (1996).
The much more difficult issue is defendant's contention that his second-degree burglary conviction and his robbery conviction should have merged into the felony murder conviction because both the burglary and the robbery were predicate offenses. In State v. Lado, 275 N.J.Super. 140, 157, 645 A.2d 1197 (App.Div.), certif. denied, 138 N.J. 271, 649 A.2d 1290 (1994), we took "judicial notice that no issue consumes more of our time than merger, and none is more time consuming or perplexing than the question of merger with respect to possession of a weapon for an unlawful purpose and a substantive offense committed with that weapon." The present merger question is equally enigmatic.
There is no doubt that a predicate offense merges into felony murder because it is "a necessary component of the commission" of felony murder. State v. Brown, 138 N.J. 481, 561, 651 A.2d 19 (1994), overruled on other grounds, State v. Cooper, 151 N.J. 326, 377, 700 A.2d 306 (1997). The problem here is that the jury was never asked to specify what crime constituted the predicate felony for felony murder. The jury was told, in effect, that either burglary or robbery could constitute a predicate offense. That, of course, was a correct statement of the law, N.J.S.A. 2C:11-3a(3), but it resulted in a jury determination that defendant was guilty of felony murder without any specification of which crime was the predicate. Indeed, the jury could well have believed both burglary and robbery were predicate offenses. The record simply provides no insight.
Defendant points us to State v. Pantusco, 330 N.J.Super. 424, 750 A.2d 107 (App.Div.), certif. denied, 165 N.J. 527, *913 760 A.2d 781 (2000). There, defendant committed a series of robberies before fleeing and getting into a motor vehicle accident that resulted in the death of an innocent motorist. Again, the jury was not asked to specify which robbery or robberies defendant was fleeing from when the motorist was killed. Id. at 444, 750 A.2d 107. We concluded the trial court should have "merged all the robbery convictions into the felony murder as the record reflects no finding as to which constituted the underlying felony, and the jury may have concluded that it was all three." Ibid. (citations omitted). The same approach was taken in Lado, where we held that in the absence of a special verdict to clarify if possession of a weapon for an unlawful purpose was broader than the substantive offense or offenses for which defendant was convicted, "the possession of a weapon with an unlawful purpose conviction must merge into the substantive offense." Lado, supra, 275 N.J.Super. at 158, 645 A.2d 1197.
The State, in turn, directs our attention to State v. Soto, 340 N.J.Super. 47, 773 A.2d 739 (App.Div.), certif. denied, 170 N.J. 209, 785 A.2d 438 (2001), where defendant was convicted of, among other things, robbery, burglary, kidnapping, and felony murder but, again, there was no jury determination of which crime was the predicate. The trial court, without any reasons discernible from our opinion, merged burglary into felony murder, but sentenced separately for robbery and kidnapping. Id. at 53, 773 A.2d 739. Without discussion as to reasons, we found "no error," and cited to State v. Manning, 234 N.J.Super. 147, 164, 560 A.2d 693 (App.Div.), certif. denied, 117 N.J. 657, 569 A.2d 1351 (1989). Soto, supra, 340 N.J.Super. at 70-71, 773 A.2d 739.
Manning is not a great deal of assistance on the present facts. Manning was convicted on two counts of felony murder, one based on escape and one on robbery. Manning, supra, 234 N.J.Super. at 164, 560 A.2d 693. There was, however, only one death so there could only be one felony murder conviction. Ibid. The State conceded that escape, the lesser of the two possible predicate offenses, could be the surviving conviction. Ibid. We accepted the State's position. Ibid. In the present case, the State is not willing to concede that the lesser offense, second-degree burglary, survives merger. It argues, without any real logic, that robbery must survive merger so that defendant does not get a "free crime." Yet, the law is clear and the State does not dispute that the predicate crime should merge.
The facts of the present case provide little additional assistance. Defendant was primarily convicted on circumstantial evidence and statements he made to persons other than the police. It appears he entered the victim's house with the intent to commit a theft, came upon the victim, and beat her to death with a hammer. At some point, foreign coins belonging to the victim were taken.
There is no satisfactory answer to this merger question. We choose to follow Pantusco, and by analogy, Lado. Here, the jury could have found both offenses to have been the predicate to murder. It was free to do so. We have no rational basis to pick one crime over the other as the predicate. Accordingly, we merge both burglary and robbery into felony murder. We encourage trial courts in the future to use special verdicts to avoid the dilemma presented in this case. R. 3:19-1(b); Diaz, supra, 144 N.J. at 643-645, 677 A.2d 1120; Lado, supra, 275 N.J.Super. at 158 n. 10, 645 A.2d 1197; State v. Williams, 213 N.J.Super. 30, 37, 516 A.2d 265 (App.Div.1986), certif. denied, 107 N.J. 104, 526 A.2d 177 (1987).
*914 Defendant's convictions for third-degree possession of a weapon for an unlawful purpose, second-degree burglary, and first-degree robbery are vacated. His judgment of conviction is otherwise affirmed.[1] We remand for modification of defendant's sentence and entry of a corrected judgment of conviction.
NOTES
[1] Defendant's third-degree burglary conviction, based on conduct occurring in February 1996 (count eleven) and thus prior to the March 1996 murder, does not merge into felony murder.