UNITED STATES of America

v.

David L. SIMMONS, Appellant.

No. 78–2064.

United States Court of Appeals,
District of Columbia Circuit.

Argued June 18, 1979.

Decided Aug. 20, 1979.

Lois E. Bruckner, Washington, D. C., (appointed by this Court) for appellant.

H. Lowell Brown, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Peter E. George and Charles J. Harkins, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

F. Joseph Warin, Asst. U. S. Atty., Washington, D. C., entered an appearance for appellee.

Before ROBINSON and MacKINNON, Circuit Judges, and HAROLD H. GREENE, United States District Judge, United States District Court for the District of Columbia.

Opinion PER CURIAM.

PER CURIAM:

Appellant David L. Simmons was found guilty on one count of the unlawful distribution of heroin in violation of 21 U.S.C. § 841(a). He had previously been convicted in 1970 and 1975 of narcotics violations and the court on the instant conviction sentenced him under 18 U.S.C. § 4205(b)(2) to three years imprisonment to be followed by a six year special parole term; and had previously been denied release pending appeal because of his prior convictions and because he was a danger to any community and unlikely to succeed on his appeal.

The excellent brief filed by his appellate counsel and her argument raises three points which we will discuss in order.

■ First, that appellant's Sixth Amendment right of cross-examination was improperly restricted when the court sustained the Government's objection to questions concerning a plea agreement entered into with a co-defendant Elaine Reed during which her availability to testify was discussed. Reed had indicated out of the presence of the jury that if called to the witness stand she would invoke her Fifth Amendment right and refuse to testify. We sustain the court's refusal to permit evidence on the subject on the basis of our opinion in *Bowles v. U. S.*, 439 F.2d 536, 541 (D.C.Cir.1970) (en banc), holding that a wit-

ness has the right to exercise such privilege without taking the stand. It was also correct in such circumstances for the court to refuse a missing witness instruction, since Reed was unavailable to either party. *Id.*

■ Second, that the District Court erred in not instructing the Jury that in order to convict appellant as an aider and abettor it was necessary to find beyond a reasonable doubt that someone else actually committed the offense and appellant assisted in its commission.

The very basis for this claim is flawed. It is based on appellant's contention that there was no *direct* evidence that Simmons committed the crime and hence he could only be proven guilty as an aider and abettor and that the aiding and abetting instruction was deficient. The fact is that there was ample *circumstantial* evidence upon which the jury could find Simmons guilty as a principal and that is sufficient. Moreover, we find the instruction that was given on aiding and abetting was correct.

Third, that appellant's prior narcotics convictions were erroneously admitted to show predisposition to commit the instant offense, when no showing was made by the Government as to their relevancy, and the court never found that their probative value on legitimate issues in the case substantially outweighed their prejudicial effect on appellant.

Simmons' defense was that he had been entrapped. Hence his prior narcotics convictions were relevant and directly probative of his predisposition to engage in distributing the heroin with which he was charged. *U. S. v. Burkley*, 591 F.2d 903 (D.C.Cir.1978); F.R.Ev.R. 404(b). The convictions were also properly probative on the issue of his credibility. F.R.Ev.R. 609. Moreover, it was the appellant who had first introduced his criminal convictions through a prior conversation elicited on *cross examination* of the narcotics agent by defense counsel:

Q Did he [Simmons—Tr. 47] indicate where he knew him from?

A Yes, sir, he did.

Q Where did he tell you he knew him from?

A He was associated with him in prison.

Q And where was that?

A Atlanta.

(Tr. August 9, 1978, p. 48.)

Later Simmons on direct examination testified as follows:

Q What were you doing before December of '77?

A I was in prison.

Q Where were you incarcerated?

A Danbury.

Q What state is Danbury in?

A Connecticut.

Q Where is Allenwood?

A Pennsylvania.

Q What were you incarcerated for; what were you convicted of?

A Narcotics.

Q Was that in this court?

A Yes. It was U. S. District Court.

Q Now, in that case did you plead guilty or were you found guilty by a jury? Did you go to trial or did you enter a plea?

A I pleaded guilty.

Q Mr. Simmons, do you know Elaine Reed?

A Yes, I do.

Q For how long have you known her?

A About twenty years.

Q Did there come a time when she introduced you to someone named John, who was looking for narcotics?

A Yes.

Q Approximately when was this?

A In April.

(Tr. August 9, 1978, pp. 93–94.)

In addition to the above testimony, two witnesses testified *in Simmons' behalf* on direct (or redirect) examination that he had been released from a halfway house the preceding December (Id., 129) and that they knew he had served time in prison (Id. 131, 136). Similar testimony was elicited by the government during cross-examination of Simmons (Id. 118–119).

Because such evidence had in effect previously been introduced into the trial it was not necessary for the trial court to make a specific finding that the probative value on the issues in the case outweighed the prejudicial effect on the defendant. By the time the government elicited the testimony as to his prior convictions it was merely cumulative of prior testimony introduced by the defendant.

Therefore we affirm the conviction and sentence.

*Judgment accordingly.*